## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FUENTES-FERNÁNDEZ & COMPANY, P.S.C., | ) | |
| | ) | |
| | ) | CIVIL NO. _____ |
| Plaintiff, | ) | |
| | ) | ACTION FOR SPECIFIC |
| vs. | ) | PERFORMANCE, BREACH OF |
| | ) | CONTRACT, AND DAMAGES |
| THE CORVUS GROUP, INC., | ) | |
| | ) | [JURY TRIAL DEMANDED] |
| Defendant. | ) | |
| | ) | |

## VERIFIED COMPLAINT

TO:   The Honorable United States District Court
for the District of Columbia

COMES NOW Plaintiff, FUENTES-FERNÁNDEZ & COMPANY, P.S.C., by and through its undersigned counsel, and for its verified complaint against defendant THE CORVUS GROUP, INC., very respectfully states, alleges, and requests as follows.

## I. INTRODUCTION.

This is an action for specific performance, breach of contract, and damages arising out of a Teaming Agreement between Plaintiff and defendant The Corvus Group, Inc., pursuant to which Plaintiff revealed substantial confidential and proprietary information obtained as the "Incumbent Contractor" of six years for the risk oversight support services ("**ROSS**") and Regulated Institution Risk Oversight ("**RIRO**") of three programs administered by United States Small Business Administration, namely, the Office of Credit and Risk Management ("**OCRM**"), examining non-federally regulated lenders and providing ROSS to regulated lenders. Defendant Corvus fraudulently induced Plaintiff into executing the Teaming Agreement, and then utilized Plaintiff's confidential and proprietary information to obtain a contract for one of the SBA's

three programs in violation of both the letter and spirit of the Teaming Agreement and in

violation of the law in this Court's jurisdiction.

## II. THE PARTIES AND RELATED ENTITIES.

1. Plaintiff Fuentes-Fernández & Company, P.S.C. (hereafter "**FFC**"), is a corporation

organized and existing under the laws of the Commonwealth of Puerto Rico and authorized to do

business in the District of Columbia, with its offices and principal place of business at 1701

Pennsylvania Avenue, N.W., Suite 300, Washington, D.C. 20006.

2. Joseph A. Fuentes (hereafter, "**Mr. Fuentes**") is a natural person, married, a

businessman, a resident of the Commonwealth of Virginia, a certified public accountant (CPA),

and the President of Plaintiff FFC.

3. Defendant The Corvus Group, Inc. (hereafter "**Corvus**"), is, upon information and

belief, a corporation organized and existing under the laws of the State of Illinois with its offices

and principal place of business at 549 W. Randolph Street, Suite 500, Chicago, Illinois 60661.

4. Mr. Thomas Rosenfeld (hereafter, "**Mr. Rosenfeld**") is a natural person, of legal age,

a businessman, and, upon information and belief, married and a resident of the State of Illinois,

and the president of defendant Corvus.

5. The Small Business Administration (the "**SBA**") is an independent agency of the

United States, established on July 30, 1954, pursuant to the Small Business Act, as amended.

6. The SBA's Office of the Chief Financial Officer, Acquisition Division, with its

principal offices located at 409 Third Street, S.W., Washington, D.C. 20416, is the division of

the SBA which conducted the procurement for three (3) risk oversight programs comprising the

SBA's Supervised Lender Safety & Soundness Examination, Risk Based Reviews and Oversight

Support Services in 2014, namely, the 7a Guaranteed Program (hereafter, the "**7a Program**");

the 504 Guaranteed Program (hereafter, the "**504 Program**"); and the Safety & Soundness

Examinations for Small Business Lending Companies and Non-Federally Regulated Lenders

("**SBLC & NFRL Lenders**") (hereafter, the "**Safety & Soundness ROSS**") (hereafter, the 507a

Program, the 504 Program, and the Safety & Soundness ROSS will be referred to, collectively, as

the "**3 SBA Programs**").

7. Throughout the procurement process for the 3 SBA Programs in 2014, Plaintiff FFC

was the SBA's "Incumbent Contractor" as it had been since 2009.

8. Mr. Fredy Babb (hereafter, "**Mr. Babb**") is a natural person, of legal age, married, a

businessman, and a resident of the District of Columbia, and was the Project Manager for FFC in

the performance of various contracts with the SBA on the 3 SBA Programs.

## III. JURISDICTION AND VENUE.

9. This Honorable Court has subject matter jurisdiction over the instant controversy

pursuant to 28 U.S.C. § 1332 inasmuch as the Plaintiffs and all defendants are all of diverse

citizenship and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest

and costs.

10. Venue is properly laid in this Honorable Court pursuant to 28 U.S.C. § 1391

inasmuch as Plaintiff's claim arose in this district since it was this judicial district in which a

substantial part of events or omissions alleged herein occurred and it is here where a substantial

part of the relief sought would be enforced.

## IV.  FACTS COMMON TO ALL CAUSES OF ACTION.

11.  The allegations contained in paragraphs 1 through 10 of this Verified Complaint are incorporated herein as if again fully set forth by Plaintiff.

### A.  The Plaintiff and the SBA.

12.  Plaintiff FFC has been in the business of providing financial services to its clients over 30 years (since 1985) which services have included auditing, consulting, taxes, and other services, including extensive services provided to the SBA.

13.  From 2009 until the present, FFC has been under contract with the SBA for the SBA's Safety & Soundness ROSS, and, since 2013, for the SBA's 7a and 504 Programs (again, collectively, the "**3 SBA Programs**").

### B.  2014:  The SBA's 7a Program Procurement Process.

#### 1. The March 2014 PSC.

14.  On March 5, 2014, the SBA's Office of the Chief Financial Officer, Acquisition Division, held a Pre-Solicitation Conference for the 3 SBA Programs, featuring the 7a Program as the first of the 3 SBA Programs procurements (hereafter, the "**March 2014 PSC**").

15.  Both Corvus and FFC attended the March 2014 PSC.

16.  **Plaintiff's Exhibit 1** hereto is a genuine copy of the attendance sheet from the March 2014 PSC showing that both FFC and Corvus attended.

17.  At the time of the March 2014 PSC, FFC's Mr. Fuentes and Corvus's Mr. Rosenfeld did not know one another and FFC and Corvus had never engaged in any kind of business relationship or competed for any client of which Plaintiff is aware.

18. The purpose of the March 2014 PSC was for the procurement of contractors for the administration of the 3 SBA Programs.

19. At the March 2014 PSC, the SBA showed a PowerPoint presentation explaining matters relevant to the procurement process for the 7a Program (hereafter, the "**March 2014 PSC PowerPoint**").

20. **Plaintiff's Exhibit 2** is a genuine copy of the March 2014 PSC PowerPoint.

21. According to slide 6 of the March 2014 PSC PowerPoint, the express purpose of the March 2014 PSC was to: "... allow prospective bidders the opportunity to gain a better understanding of the objective of the solicitation.  In addition, it offers SBA an opportunity to stress the importance of the significant elements of the Request for Proposal."

22. The March 2014 PSC PowerPoint identified FFC on its 22nd slide as the SBA's "Incumbent Contractor for Similar Services" for the 7a Program, as well as the other two SBA Programs, 504 and SGLC & NFRL Lenders.

23. Corvus was well aware at the March 2014 PSC that FFC was responsible for the 3 SBA Programs and that the Pre-Solicitation Conference was to cover all of the 3 SBA Programs.

24. Upon information and belief, at the time of the March 2014 PSC, defendant Corvus was acquainted with Mr. Babb.

**2. The Corvus/FFC Teaming Agreement.**

25. By an email on May 2, 2014, Mr. Babb, FFC's project manager for FFC's contract for the risk oversight of the 3 SBA Programs, "introduced" Mr. Rosenfeld of Corvus to Mr. Fuentes, advising Mr. Fuentes that Mr. Rosenfeld was going to be in Washington, D.C., the following week.

26. **Plaintiff's Exhibit 3** is a genuine copy of Mr. Babb's May 2, 2014, email to Mr. Fuentes.

27. Mr. Fuentes agreed to meet with Mr. Rosenfeld and to the possibility of FFC teaming with Corvus on proposals for the 3 SBA Programs if they got along.

28. The first proposal solicited by the SBA at the March 2014 PSC was for the 7a Program.

29. During the week ending May 9, 2014, Mr. Rosenfeld came to the offices of Plaintiff FFC in Washington to meet with Mr. Fuentes (hereafter, the **"Initial Meeting"**).

30. At the Initial Meeting, Mr. Rosenfeld proposed to FFC that Corvus and FFC form a "team" to pursue the SBA "7a Risk Oversight Opportunity."

31. Mr. Rosenfeld followed up the Initial Meeting with an email dated May 9, 2014, reiterating defendant Corvus' desire to "team" with Plaintiff FFC ("I am thrilled that we are moving forward, forming what I think is an excellent team to pursue the SBA 7a Risk Oversight opportunity."), and, to that effect, attaching a draft of "a teaming agreement."

32. **Plaintiff's Exhibit 4** hereto is a genuine copy of Mr. Fuentes' May 9, 2014, email sending the signed (by FFC) Teaming Agreement to Mr. Rosenfeld indicating that "I look forward to working with The Corvus Group" in response to Mr. Rosenfeld's email of that same date, also in Plaintiff's Exhibit 4.

33. By email to Mr. Fuentes on May 13, 2014, at 3:29 p.m., Ms. Anna Zuniga-Cruz of Corvus emailed the SBA Teaming Agreement, executed by defendant Corvus.

34. **Plaintiff's Exhibit 5** hereto is a genuine copy of Ms. Zuniga-Cruz's May 13, 2014, email to Mr. Fuentes.

35.   Inasmuch as Mr. Rosenfeld and Corvus had been introduced to FFC and Mr. Fuentes by Mr. Babb, and given the professional manner in which Mr Rosenfeld comported himself at the Initial Meeting, Mr Fuentes executed the Teaming Agreement just as it was sent that same day (the "**Teaming Agreement**"), and returned it to Corvus.

36.   By email from Mr. Bill Buhmann, Director, Advisory Services, of Corvus to Mr. Fuentes and Mr. Babb on May 13, 2014, at 4:47 p.m., Mr. Buhmann welcomed FFC to "the SBA Pursuit Team" and requested substantial information from FFC.

37.   **Plaintiff's Exhibit 6** is a genuine copy of Mr. Buhmann's May 13, 2014, email to Mr. Fuentes and Mr. Babb.

38.   **Plaintiff's Exhibit 7** is a genuine copy of the fully executed the Teaming Agreement.

39.   It was plain to defendant Corvus in March 2014 that FFC was the Incumbent Contractor for all of the 3 SBA Programs.

40.   It was obvious in May 2014 that in order for Corvus to successfully navigate the procurement process for the SBA's 7a Program (and any other of the 3 SBA Programs), it would be of great value for Corvus to have access to the Incumbent Contractor's (FFC's) confidential and proprietary information in order to prepare Corvus' proposal for the 7a [or any other] SBA Program for "Similar Services."

41.   After FFC executed the Teaming Agreement, FFC sent Corvus its substantial confidential and proprietary information regarding its performance as Incumbent Contractor for the 3 SBA Programs, including its technical and pricing structure on its Safety & Soundness ROSS contract.

### 3. FFC's Disclosures to Corvus of Confidential and Proprietary Information.

42.   Plaintiff FFC's disclosures of its confidential and proprietary information, including its pricing structure, to defendant Corvus was from its performance as the Incumbent Contractor for the 3 SBA Programs.

43.   Article 4 (PROPRIETARY INFORMATION) of the Teaming Agreement, Plaintiff's Exhibit 7 above, provides, among other things (emphasis added), that:

> During the term of this Agreement, Prime and Sub, to the extent of each party's contractual and lawful right to do so, shall exchange such proprietary, technical and other information as is reasonably required for each to perform its obligations hereunder. ***Prime and Sub each agree to keep in confidence and prevent the disclosure to any person(s)*** outside their respective organizations or any person(s) ***within their organizations not having a need to know***, all information received from the other which ..., ***given its character and nature, a reasonable person under like circumstances would treat as proprietary, and to use such information only in connection with their obligations under this Agreement*** ...[.]

44.   It was FFC's understanding that its being forthcoming in providing confidential and proprietary information to Corvus pursuant to the Teaming Agreement, including pricing information for all of the 3 SBA Programs, was protected by the foregoing provision of the Teaming Agreement.

45.   At no time either prior to or after the execution of the Teaming Agreement did defendant Corvus or Mr Rosenfeld ever advise Plaintiff FFC or Mr. Fuentes that Corvus was intending to submit – or even considering submitting – a proposal for either the SBA's anticipated 504 Program or its anticipated SBLC & NFRL ROSS.

46.   Given the nature of the disclosures of confidential and proprietary information made to Corvus under the terms of the Teaming Agreement, Corvus's utilizing FFC's confidential and proprietary information to on its own submit proposals to SBA for the 504 Program or the Safety

& Soundness ROSS without the participation of FFC was something that FFC did not ever even consider, given the protective terms of the Article 4 (PROPRIETARY INFORMATION) of the Teaming Agreement; the requirement of Article 2 of the Teaming Agreement (AWARD OF CONTRACT) that "the parties will in good faith negotiate a mutually acceptable subcontract"; and the general requirement of good faith in contracting.

### 4. The RFP for the Safety & Soundness ROSS.

47. The SBA's Request for Proposals (RFP) for the continuation of the SBA's Safety & Soundness ROSS, another of the 3 SBA Programs, was issued in late July 2014.

48. **Plaintiff's Exhibit 8** is a genuine copy of the SBA's July 25, 2014, Safety & Soundness ROSS RFP with Mr. Babb's July 28, 2014, email sending it to Mr. Fuentes.

49. Plaintiff heard nothing from defendant Corvus about any intention it may have had to submit on its own a proposal for the SBA's Safety & Soundness ROSS.

50. By his August 28, 2014, email to Mr. Fuentes and others, Mr. Rosenfeld conveyed the "Good news ... that [Corvus's proposal for the 7a Program was] ... considered `technically acceptable'."

51. **Plaintiff's Exhibit 9** is a genuine copy of Mr. Rosenfeld's August 28, 2014, email to Mr. Fuentes and others.

52. In his August 28, 2014, email to Mr. Fuentes and others, Mr. Rosenfeld also requested FFC's "insight on how SBA is structured" among other things.

53. In his August 28, 2014, email to Mr. Fuentes, Mr. Rosenfeld called the news "a good sign for us" and indicated that "we do have real work to do to ensure we drive this home."

54. In his August 28, 2014, email to Mr. Fuentes, Mr. Rosenfeld said nothing about any intention on the part of defendant Corvus to submit an independent proposal for the SBA's Safety & Soundness ROSS.

55. After August 2014, Plaintiff heard nothing more from defendant Corvus about any of the 3 SBA Programs.

56. On September 22, 2014, the SBA issued its notice of the award of a contract for the 7a Program – Contract Award Number SBAHQ-14-D-0007 – to Garcia & Ortiz, P.A., for the amount of $30,000,000.00 (hereafter, the "**7a Notice of Award**").

57. **Plaintiff's Exhibit 10** is a genuine copy of the 7a Notice of Award to García & Ortiz.

58. Again, after the 7a Notice of Award, Plaintiff heard nothing from defendant Corvus.

59. The original date for the submittal of proposals for the SBA's Safety & Soundness Program was August 15, 2014.

60. The original date of August 15, 2014, was set forth in Plaintiff's Exhibit 8, above.

61. The date for the submittal of proposals for the SBA's Safety and Soundness Program was extended by a Second Amendment to the RFP issued on September 9, 2014 (hereafter, the "**Second Amendment**"), followed by a Third Amendment to the RFP issued on October 3, 2014, after the 7a Program had already been awarded to another proposer.

62. **Plaintiff's Exhibit 11** contains genuine copies of the various Amendments to the RFP for the 7a Program.

### 5. Defendant Corvus "Steals" the Safety & Soundness Program.

63. Defendant Corvus at no time advised Plaintiff, and Plaintiff had no idea in August, September or October 2014, that Corvus was contemplating the submittal of a proposal on its

own – or that it actually submitted a proposal – for the SBA's Safety & Soundness Program.

64. Had Plaintiff known of such intentions or actions on the part of defendant Corvus, Plaintiff would have taken action to stop such conduct as being a manifest violation of both the terms and the spirit of the Teaming Agreement.

65. Defendant Corvus could not have submitted a competitive proposal for the SBA's Safety & Soundness Program without utilizing the confidential and proprietary information, including pricing, provided to it by the Incumbent Contractor, Plaintiff FFC pursuant to the Teaming Agreement.

66. Again, after August 2014, Plaintiff heard nothing further from defendant Corvus.

67. The award by the SBA of a contract for its Safety & Soundness Program, Contract Award Number SBAHQ-14-R-0016, was made on the "Posted Date" and "Contract Award Date" of March 11, 2015 (the "**Notice**").

68. **Plaintiff's Exhibit 12** is a genuine copy of the Notice.

69. The award by the SBA of a contract for its Safety & Soundness Loan ROSS to defendant Corvus was for $10,000,000.00.

70. There is no way that defendant Corvus could have submitted a successful Proposal Safety & Soundness ROSS without the proprietary and confidential information, including pricing, provided to it by Plaintiff from Plaintiff's tenure as the SBA's Incumbent Contractor for that Program.

71. All of the proprietary and confidential information provided by Plaintiff to defendant Corvus pursuant to the Teaming Agreement, including pricing, was provided in good faith.

CIVIL NO. _____ (___); *Fuentes-Fernández & Company, P.S.C. vs. The Corvus Group, Inc.*
VERIFIED COMPLAINT
Page 12

72. All of the proprietary and confidential information provided by Plaintiff to defendant Corvus pursuant to the Teaming Agreement was information "... which, given its character and nature, a reasonable person under like circumstances would treat as proprietary[.]"

73. The SBA Program for which the Corvus/FFC "team" was purportedly constituted was RFP Number **SBAHQ-14-R-0003**.

74. In the Notice, the reference is to "Solicitation Number: **SBAHQ-14-R-0016**."

75. Defendant Corvus knew that Plaintiff was the SBA's Incumbent Contractor when Corvus bid on its own behalf for the SBA's Safety & Soundness ROSS, using Plaintiff's confidential and proprietary information, including pricing on its ongoing Safety & Soundness contract, and without ever advising Plaintiff of either Corvus' intent to submit or its submittal of a proposal for the SBA's Safety & Soundness ROSS.

## V. <u>CAUSES OF ACTION</u>.

### FIRST CAUSE OF ACTION

### [FOR SPECIFIC PERFORMANCE OF CONTRACT OBLIGATIONS]

76. The allegations contained in paragraphs 1 through 75 of this Verified Complaint are incorporated herein by this reference as if again fully set forth by Plaintiff.

77. By utilizing Plaintiff's confidential and proprietary information, including pricing, provided by Plaintiff to defendant Corvus pursuant to the Teaming Agreement for the purpose of submitting a proposal for its own account for the SBA's Safety & Soundness ROSS, defendant Corvus breached the Teaming Agreement.

78. By utilizing Plaintiff's confidential and proprietary information, including pricing, provided by Plaintiff to defendant Corvus pursuant to the Teaming Agreement for the purpose of

submitting a proposal for its own account for the SBA's Safety & Soundness ROSS, defendant

Corvus acted in bad faith in connection with its proposal for the Safety & Soundness ROSS and

breached both the terms and conditions and the spirit of the Teaming Agreement.

79.  The Teaming Agreement was executed on May 9, 2014.

80.  The Teaming Agreement is for a term of one year.

81.  Neither party to the Teaming Agreement has given the requisite 10-day notice to the

other to terminate it.

82.  The Teaming Agreement is still an existing agreement. inasmuch as a year has not

passed.

83.  The Teaming Agreement provides, in paragraph 1.G, that (emphasis added):

"Accordingly, the parties agree that during the term of this Agreement they will not submit or

participate in the preparation or submission of a proposal for the Program *independently* or with

any other party."

84.  For defendant Corvus to have submitted an independent proposal for the SBA's

Safety & Soundness ROSS was a breach of the Teaming Agreement.

85.  In doing the things heretofore alleged, defendant Corvus has breached the Teaming

Agreement and the performance by defendant Corvus of all of the duties and responsibilities of

the contractor for the SBA's Safety & Soundness ROSS without Corvus "negotiat[ing] a

mutually acceptable subcontract" for such services as were contemplated by the Teaming

Agreement, to include "Quality Assurance, Training and other related services" would cause

great damages to Plaintiff FFC.

CIVIL NO. _____(___); *Fuentes-Fernández & Company, P.S.C. vs. The Corvus Group, Inc.*
VERIFIED COMPLAINT
Page 14

WHEREFORE, Plaintiff Fuentes-Fernández & Company, P.S.C., respectfully demands

judgment against defendant The Corvus Group, Inc., ordering specific performance by defendant

Corvus with respect to "negotiat[ing] a mutually acceptable subcontract" for such services by

FFC under the contract for the Safety & Soundness ROSS as were contemplated by the Teaming

Agreement, to include "Quality Assurance, Training and other related services[,]" plus an award

of the costs of this action, reasonable attorneys' fees, and such other and further relief as to the

Court seems appropriate under the circumstances.

## SECOND CAUSE OF ACTION

## [FOR BREACH OF CONTRACT]

86.  The allegations contained in paragraphs 1 through 85 of this Verified Complaint are

incorporated herein by this reference as if again fully set forth by Plaintiff.

87.  In doing the things heretofore alleged, defendant Corvus has breached the Teaming

Agreement and caused damages to Plaintiff FFC.

88.  Plaintiff submits that a "mutually acceptable subcontract" for it to perform a fair

share of the services required of defendant Corvus by the contract for the SBA's Safety &

Soundness ROSS would be one-half (½) of the contract awarded therefor by the SBA, or FIVE

MILLION DOLLARS ($5,000,000.00).

89.  Based on its performance as the "Incumbent Contractor" for the past six years for the

SBA's Safety & Soundness ROSS, Plaintiff estimates that its reasonable expectation of

subcontract work on its one-half (½) of the TEN MILLION DOLLAR ($10,000,000.00) contract

awarded to defendant Corvus for the SBA's Safety & Soundness Program would be FIVE

MILLION DOLLARS ($5,000,000.00), with an anticipated profit of FIVE HUNDRED

CIVIL NO. _____(___); *Fuentes-Fernández & Company, P.S.C. vs. The Corvus Group, Inc.*
VERIFIED COMPLAINT
Page 15

THOUSAND DOLLARS ($500,000.00).

WHEREFORE, Plaintiff Fuentes-Fernández & Company, P.S.C., respectfully demands

judgment against defendant The Corvus Group, Inc., for damages in the amount of FIVE

HUNDRED THOUSAND DOLLARS ($500,000.00) for the breach by defendant Corvus of both

the letter and the spirit of the Teaming Agreement, plus the costs of this action and reasonable

attorneys' fees.

## THIRD CAUSE OF ACTION

### [FOR FRAUDULENT INDUCEMENT TO CONTRACT]

90.  The allegations contained in paragraphs 1 through 89 of this Verified Complaint are

incorporated herein by this reference as if again fully set forth by Plaintiff.

91.  In inducing Plaintiff FFC to enter into the Teaming Agreement, defendant Corvus

represented to Plaintiff that it would:

a. "... keep in confidence and prevent the disclosure to ... any person(s) within their

organizations not having a need to know, all information received from the other ... which, given

its character and nature, a reasonable person under like circumstances would treat as proprietary,

and to use such information only in connection with their obligations under this Agreement";

b. "If [Corvus] is selected by [SBA] as the prime contractor for the [SBA]

program[s], and the performance thereof requires the services of Sub as set forth in the proposal,

Prime will offer to Sub a contract for such services and the parties will in good faith negotiate a

mutually acceptable subcontract for such services";

c. enter into a subcontract with Plaintiff for, at least, "Quality Assurance, Training and

other related services."

CIVIL NO. _____(___); *Fuentes-Fernández & Company, P.S.C. vs. The Corvus Group, Inc.*
VERIFIED COMPLAINT
Page 16

92. Defendant Corvus's representations that it would do the things set forth in the preceding paragraph of this Verified Complaint were material representations.

93. Defendant Corvus did not do, and did not intend to do the things that it represented in paragraph 91 above if it were awarded a contract for the SBA's Safety & Soundness ROSS.

94. Defendant Corvus has not maintained the confidentiality of the confidential and proprietary information provided to it by Plaintiff pursuant to the Teaming Agreement.

95. Defendant Corvus has not "offer[ed] to [Plaintiff] sub a subcontract for such services" as set forth in Exhibit A to the Teaming Agreement to include "Quality Assurance, Training and other related services."

96. Defendant Corvus has not "... in good faith negotiate[d] a mutually acceptable subcontract for such services" as those set forth in Attachment A to the Teaming Agreement to include "Quality Assurance, Training and other related services."

97. Defendant Corvus's reprentations that it would do the things set forth in the paragraph 91 above were false.

98. Defendant Corvus never contacted Plaintiff in any way or manner with respect to its proposal for or award of a contract for the SBA's Safety & Soundness ROSS.

99. In providing its confidential and proprietary information, including pricing, developed during Plaintiff's six (6) years as the SBA's "Incumbent Contractor" for the SBA's Safety & Soundness ROSS, Plaintiff relied upon the representations made by defendant Corvus in paragraphs 2 and 4 and Exhibit A to the Teaming Agreement.

100. By its reliance upon the false representations made by defendant Corvus in paragraphs 2 and 4 and Exhibit A to the Teaming Agreement as set forth above, Plaintiff suffered

CIVIL NO. _____(___); *Fuentes-Fernández & Company, P.S.C. vs. The Corvus Group, Inc.*
VERIFIED COMPLAINT
Page 17

damages.

101. In doing the things heretofore alleged, in particular, in fraudulently inducing Plaintiff into executing the Teaming Agreement based on the false representations made by defendant Corvus as set forth in paragraph 91 above, defendant Corvus has damaged Plaintiff.

102. Based on its performance as the "Incumbent Contractor" for the past six years for the SBA's Safety & Soundness ROSS, Plaintiff estimates that its reasonable expectation of profit on its one-half (½) of the TEN MILLION DOLLAR ($10,000,000.00) contract awarded to defendant Corvus for the SBA's Safety & Soundness ROSS would be FIVE MILLION DOLLARS ($5,000,000.00).

103. In doing the things heretofore alleged, defendant Corvus acted in a malicious and reprehensible manner, in willful disregard of the rights of Plaintiff FFC, for which defendant Corvus should be compelled to pay Plaintiff punitive damages in an amount not less than three times the actual damages suffered by Plaintiff FFC.

WHEREFORE, Plaintiff Fuentes-Fernández & Company, P.S.C., respectfully demands judgment against defendant The Corvus Group, Inc., for damages in the amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) for the fraudulent inducement by defendant Corvus to obtain Plaintiff's execution of the Teaming Agreement, plus punitive damages in the amount of ONE MILLION FIVE HUNDRED THOUSAND DOLLARS ($1,500,000.00), the costs of this action, reasonable attorneys' fees, and such other and further relief as to the Court seems appropriate under the circumstances.

CIVIL NO. _____(___); *Fuentes-Fernández & Company, P.S.C. vs. The Corvus Group, Inc.*
VERIFIED COMPLAINT
Page 18

## FOURTH CAUSE OF ACTION

## [FOR UNFAIR COMPETITION AND MISAPPROPRIATION]

104. The allegations contained in paragraphs 1 through 103 of this Verified Complaint are incorporated herein by this reference as if again fully set forth by Plaintiff.

105. In doing the things heretofore alleged in submitting a proposal for and obtaining the award of a contract for the SBA's Safety & Soundness ROSS after obtaining significant confidential and proprietary information, including pricing information, from Plaintiff FFC, the SBA's "Incumbent Contractor" for that Program, defendant Corvus has engaged in unfair competition by misappropriating that confidential and proprietary information, including pricing information, which constituted trade secrets of Plaintiff FFC.

106. In doing the things heretofore alleged, defendant Corvus acted in a malicious and reprehensible manner, and in willful disregard of the rights of Plaintiff FFC, for which defendant Corvus should be compelled to pay Plaintiff punitive damages in an amount not less than three times the actual damages suffered by Plaintiff FFC.

WHEREFORE, Plaintiff Fuentes-Fernández & Company, P.S.C., respectfully demands judgment against defendant The Corvus Group, Inc., for damages in the amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) for the unfair competition and misappropriation of Plaintiff FFC's confidential and proprietary information, including pricing information, by defendant Corvus to obtain for itself the contract for the SBA's Safety & Soundness ROSS, plus punitive damages in the amount of ONE MILLION FIVE HUNDRED THOUSAND DOLLARS ($1,500,000.00), the costs of this action, reasonable attorneys' fees, and such other and further relief as to the Court seems appropriate under the circumstances.

# FIFTH CAUSE OF ACTION

## [FOR INJUNCTIVE RELIEF AGAINST DEFENDANT CORVUS]

107. The allegations contained in paragraphs 1 through 106 of this Verified Complaint are incorporated herein by this reference as if again fully set forth by Plaintiff.

108. Mr. Babb has been the Project Manager for Plaintiff in the performance of various contracts with the SBA as its "Incumbent Contractor" on the 3 SBA Programs since 2009.

109. As set forth in paragraphs 24 - 26 of this Verified Complaint, it was Mr. Babb who introduced defendant Corvus to Plaintiff.

110. Paragraph 11 of the Teaming Agreement (NON-SOLICITATION) provides that: "During the term of this Agreement and for a period of one (1) year following its expiration or termination, neither party will actively solicit, employ or otherwise engage any of the other party's employees (including former employees) who were involved in the proposal."

111. Upon information and belief, defendant Corvus intends to hire Mr. Babb as a subcontractor for its contract for the SBA's Safety & Soundness ROSS.

112. Given the provisions of paragraph 11 of the Teaming Agreement, should defendant Corvus "solicit, employ or otherwise engage" Mr. Babb to work with it in connection with its performance of its contract for the SBA's Safety & Soundness ROSS, Plaintiff:

    a. would be irreparably harmed;

    b. has a substantial likelihood of succeeding on the merits of obtaining a permanent injunction against defendant Corvus hiring, employing or otherwise engaging Mr. Babb for work on the Safety & Soundness ROSS;

CIVIL NO. _____(___); *Fuentes-Fernández & Company, P.S.C. vs. The Corvus Group, Inc.*
VERIFIED COMPLAINT
Page 20

c. would be harmed more by the denial of injunctive relief preventing such hiring,

employing or otherwise engaging Mr. Babb by Corvus; and

d. has the support of public policy which favors the enforcement of contracts, fair

competition, good faith, and other general equitable principles.

WHEREFORE, Plaintiff Fuentes-Fernández & Company, P.S.C., respectfully demands

judgment against defendant The Corvus Group, Inc., in the form of a preliminary and permanent

injunction against defendant Corvus, directly or indirectly, soliciting, employing or otherwise

engaging Mr. Freddie Babb for work of any kind, directly or indirectly, in connection with its

contract with the SBA for the Safety & Soundness ROSS.

RESPECTFULLY SUBMITTED, in Washington, D.C., on May 20, 2015.

WEINSTEIN-BACAL, MILLER & VEGA, P.S.C.
González-Padín Building - Penthouse
154 Rafael Cordero Street, Plaza de Armas
Old San Juan, Puerto Rico 00901
Telephone: (787) 977-2550
Telecopier: (787) 977-2559

By:    *S/Stuart A. Weinstein-Bacal*
D.C. Bar No. 298166

Attorneys for Fuentes-Fernández & Company, P.S.C.

## DEMAND FOR JURY TRIAL

Fuentes-Fernández & Company, P.S.C., hereby demands trial by a jury on all of the

causes of action in this Verified Complaint which are triable by a jury.

*S/Stuart A. Weinstein-Bacal*

CIVIL NO. _____(___); *Fuentes-Fernández & Company, P.S.C. vs. The Corvus Group, Inc.*
VERIFIED COMPLAINT
Page 21

## VERIFICATION:

I, Joseph A. Fuentes, of legal age, married, certified public accountant, President of

Fuentes-Fernández & Company, P.S.C., and resident of Arlington, Virginia, hereby verify under

penalty of perjury that have read the foregoing Verified Complaint and that the statements of fact

contained therein are true and correct to my personal knowledge, or, where stated, upon

information and belief. The foregoing statement is made under penalty of perjury pursuant to the

authority of 28 U.S.C. Section 1746:

DATED: May 20, 2015, in Washington, D.C.

_____
JOSEPH A. FUENTES

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FUENTES-FERNÁNDEZ & COMPANY,<br>P.S.C.,<br><br>       Plaintiff,<br><br>vs.<br><br>THE CORVUS GROUP, INC.,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL NO. _____

ACTION FOR SPECIFIC
PERFORMANCE, BREACH OF
CONTRACT, AND DAMAGES

[JURY TRIAL DEMANDED]

## TABLE OF CONTENTS of the VERIFIED COMPLAINT

I. INTRODUCTION ................................................................................................ 1

II. THE PARTIES AND RELATED ENTITIES ............................................. 2

III. JURISDICTION AND VENUE .................................................................. 3

IV. FACTS COMMON TO ALL CAUSES OF ACTION ............................. 4

    A. The Plaintiff and the SBA ...................................................................... 4

    B. 2014: The SBA's 7a Program Procurement Process ............................ 4

        1. The March 2014 PSC ..................................................................... 4

        2. The Corvus/FFC Teaming Agreement ........................................... 5

        3. FFC's Disclosures to Corvus of Confidential and Proprietary Information. 8

        4. The RFP for the Safety & Soundness ROSS ................................. 9

        5. Defendant Corvus "Steals" the Safety & Soundness Program .......... 10

V. CAUSES OF ACTION ................................................................................ 12

DEMAND FOR JURY TRIAL ......................................................................... 20

VERIFICATION .................................................................................................. 21

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FUENTES-FERNÁNDEZ & COMPANY, P.S.C., | ) ) ) |
| **Plaintiff,** | ) ) |
| vs. | ) ) ) |
| THE CORVUS GROUP, INC., | ) ) |
| **Defendant.** | ) ) |
| _____ | ) |

CIVIL NO. _____

ACTION FOR SPECIFIC
PERFORMANCE, BREACH OF
CONTRACT, AND DAMAGES

[JURY TRIAL DEMANDED]

### PLAINTIFF'S EXHIBITS to the VERIFIED COMPLAINT

| | | |
|---|---|---|
| **Plaintiff's Exhibit 1** | March 5, 2014 | PSC attendance sheet showing that both FFC and Corvus attended. |
| **Plaintiff's Exhibit 2** | March 5, 2014 | PSC PowerPoint. |
| **Plaintiff's Exhibit 3** | May 2, 2014 | Mr. Babb's email to Mr. Fuentes. |
| **Plaintiff's Exhibit 4** | May 9, 2014 | Mr. Fuentes' email sending the signed (by FFC) Teaming Agreement to Mr. Rosenfeld indicating that "I look forward to working with The Corvus Group" in response to Mr. Rosenfeld's email of that same date, also in Plaintiff's Exhibit 4. |
| **Plaintiff's Exhibit 5** | May 13, 2014 | Ms. Zuniga-Cruz's May 13, 2014, email to Mr. Fuentes. |
| **Plaintiff's Exhibit 6** | May 13, 2014 | Mr. Buhmann's May 13, 2014, email to Mr. Fuentes and Mr. Babb. |
| **Plaintiff's Exhibit 7** | | Fully-executed Teaming Agreement. |
| **Plaintiff's Exhibit 8** | July 25, 2014 | RFP for SBA's Safety & Soundness ROSS. |
| **Plaintiff's Exhibit 9** | August 28, 2014 | Mr. Rosenfeld's August 28, 2014, email to Mr. Fuentes re SBA finding proposal "technically acceptable." |
| **Plaintiff's Exhibit 10** | September 22, 2014 | 7a Notice of Award. |
| **Plaintiff's Exhibit 11** | July 24, October 3, and October 29, 2014 | Amendments to RFP for the 7a Program |
| **Plaintiff's Exhibit 12** | March 11, 2014 | SBA Notice of Award of contract for SBA Safety & Soundness ROSS, Contract Award Number SBAHQ-14-R-0016 |